IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

JOHNNY R. GREEN,

    Plaintiff,

v.

EMERSON ELECTRIC COMPANY,

    Defendant.

CIVIL ACTION NO. 20 CV 1602

Jury Trial Demanded

## COMPLAINT

NOW COMES the Plaintiff, Johnny R. Green, by and through his attorneys, McDonald & Kloth, LLC, and as and for his Complaint against the Defendant, Emerson Electric Company, alleges and shows to the court as follows:

### NATURE OF T HE ACTION

This action arises under Title VII of the Civil Rights Act of 1964 (hereinafter, "Title VII"), as amended, the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991 (hereinafter, "Section 1981"), and the Americans with Disabilities Act (hereinafter, "ADA") to correct unlawful employment practices on the basis of race, color, disability, and opposition to discrimination in the workplace, and to provide appropriate relief to the Plaintiff who was adversely affected by such practices. Plaintiff seeks a permanent injunction against Defendant; lost wages, employment benefits, and other compensation; compensatory damages; punitive damages; costs; attorney's fees; and any other such relief the Court may deem appropriate.

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is proper pursuant to 28 USC §1331. This action is authorized and instituted pursuant to Sections 703 and 704 Title VII, 42 USC §2000e-2 et seq. and Chapter 126 of the ADA, 42, U.S.C. § 12101 *et seq*.

2. Venue is proper in this Court pursuant to 28 USC §1391(b) and (c). The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Wisconsin, and the employment records relevant to such practices are maintained and administered within the Eastern District of Wisconsin.

## PARTIES

3. The Plaintiff, Johnny R. Green ("Green") is an adult resident of the State of Wisconsin with a residence located at 2030 Frankie Place, Apt. 201, Mount Pleasant, WI 53406.

4. The Defendant, Emerson Electric Company ("Emerson"), is multi-national corporation with its global headquarters located at 8000 West Florissant Avenue, St. Louis, Missouri 63136. Emerson does substantial business within the State of Wisconsin with plants in Racine and Kenosha.

## STATEMENT OF CLAIMS

5. Green has been employed with Emerson from October 21, 1983 to the present.

6. Green has performed the job of Supervisor from 1996 to present.

7. Green identifies his race as African American and his color as black.

8. Green is disabled as defined by the ADA as he was diagnosed with rectal cancer in or about 2011.

9. Emerson has been aware of Green's rectal cancer diagnosis since in or about 2011.

10. Green is disabled as defined by the ADA as he was diagnosed with a rare eye disease, Dendritic Keratitis in his left eye, in or about November, 2016.

11. Green sought medical attention for his eye issues for several months preceding the diagnosis and Emerson was aware of Green's medical issues in this regard.

12. Emerson has been aware of Green's diagnosis since in or about November, 2016.

13. Green has been able to perform his job at Emerson with a reasonable accommodation for his disabilities. The reasonable accommodation he required was time off from work to attend doctor's appointments related to Green's cancer treatment and eye treatment.

14. Green has at all times performed his job satisfactorily at Emerson.

15. Green reported to Senior Supervisor, Joe Orta ("Orta"), from in or about March, 2019 through the present.

16. Orta possessed the authority to materially change the terms and conditions of Green's employment including, but not limited to, subject Green to disciplinary action, change Green's work schedule, transfer Green, and other actions.

17. Green reported to Senior Manufacturing Director, Mike Cretton ("Cretton") from in or around the summer of 2017 to the fall of 2018. Green currently reports to Cretton when Orta is not at work.

18. Cretton possessed the authority to materially change the terms and conditions of Green's employment including, but not limited to, subject Green to disciplinary action up to and including termination, change Green's work schedule, transfer Green, and other actions.

19. Emerson has treated Green less favorably than non-Disabled employees who were similarly situated to Green.

20. Emerson's management team made inappropriate and derogatory comments to and about Green based upon his disability.

21. The inappropriate and derogatory comments based upon Green's disabilities included, but is not limited to, the following:

- Whenever Green had a doctor's appointment related to treatment for his rectal cancer, Orta and Bowman would tease Green, stating that he "liked it up the butt;" he enjoyed when they "played with his butt;" he "liked it in the ass;" "are you going to come back

- bleeding out of your ass;" "it's that time of the month;" and other similarly offensive and derogatory comments;

- When Orta became aware of Green's eye disability, he often teased Green about getting "eye herpes" from an "unclean woman," asking "what is that discharge from your eye - is that discharge coming from the herpes?" and other similarly offensive and derogatory comments.

- Bowman referred to Green's body as being "all worn out and no good; useless" because of his disabilities.

22. Green objected to Orta's and Bowman's inappropriate and derogatory comments about his disabilities, but Orta did not stop making the comments.

23. Orta often criticized and teased Green for taking time off from work to receive treatment for his disabilities.

24. Green complained to Emerson concerning Orta's and Bowman's inappropriate and derogatory comments about his disabilities, but Emerson took no action to stop the comments.

25. Green complained to Gary Ilka and Joe Dillon (President) about the inappropriate and offensive derogatory comments regarding his disabilities.

26. Emerson has treated Green less favorably than non-African American, non-Black employees who were similarly situated to Green.

27. On December 13, 2019, Emerson issued Green a "Performance Notice" outlining alleged deficiencies in performance. Green provided Emerson with documentation and information establishing that the alleged performance deficiencies were false and unwarranted. Emerson ignored the documentation and information and maintained the Performance Notice.

28. Emerson continuously segregated Green from meetings in which he should have participated as a Supervisor. Other, non-African American and non-Black Supervisors participated in the meetings.

29. Emerson continuously isolated Green from important business information to which he should have had access. Other, non-African American and non-Black Supervisors had access to this information.

30. In or about January, 2020, Emerson passed over Green for a promotion to a Manager position, and instead gave the Manager job to a Caucasian employee with less experience, education, and qualifications.

31. Emerson does not permit Green to work alone as the only supervisor in the building but allow similarly situated employees not in Green's protected category to work alone as the only supervisor in the building.

32. Emerson has a history of permitting inappropriate and derogatory comments based upon race and color such as permitting the use of the word "Nigger" in the workplace, permitting others to call Green "black monkey" in the workplace, permitting others to call Green "Baba the jungle boy" in the workplace, permitting others to make racist stereotypical comments to Green about eating "fried chicken, watermelon, and cornbread," and permitting other race and color related derogatory comments.

33. Green complained to Emerson about the inappropriate and derogatory comments referenced in the preceding paragraph but Emerson took no action to stop the comments.

34. Emerson's current management team made inappropriate and derogatory comments to and about Green based upon his race and color.

35. The inappropriate and derogatory comments based upon race and color included, but is not limited to, the following:

5

- Orta and Jim Bowman ("Bowman"), Lead Supervisor, stated to Green that "black people don't eat mayo because it kills them;"

- Orta stating to Green that he (Orta) did not believe in "diversity" or "diversity training;"

- Orta stating to Green that African Americans do not deserve affirmative action programs;

- Orta stating to Green that African Americans do not deserve more opportunities because African Americans do not take advantage of the opportunities they have;

- Cretton made jokes about Green being a "rapper;"

- Bowman referred to Green as "Opey" which refers to an African American slave working in a cotton field.

36. Green complained to Emerson's Vice President of Human Resources, Gary Ilka ("Ilka"), concerning the inappropriate and derogatory comments based upon race and color as well as the disparate treatment based upon race and color. Neither Ilka nor Emerson took any action to stop the derogatory comments or disparate treatment.

37. Green complained to Emerson's senior management team concerning the inappropriate and derogatory comments based upon race and color as well as the disparate treatment based upon race and color. Emerson took no action to stop the derogatory comments or disparate treatment.

38. Green complained to Emerson's ethics hotline concerning the inappropriate and derogatory comments based upon race and color as well as the disparate treatment based upon race and color. Emerson took no action to stop the derogatory comments or disparate treatment.

39. Emerson has treated Green less favorably than non-Disabled employees where were similarly situated to Green.

40. Orta and Cretton threatened Green's employment on numerous occasions, stating that they, together, would force Green out of his job.

41. Green asserts that Emerson has discriminated against him and harassed him because of his race and color in violation of Title VII.

42. Green asserts that Emerson has discriminated against him and harassed him because of his disabilities in violation of the ADA.

43. Green asserts that Emerson has retaliated against him for objecting to discrimination and harassment in the workplace in violation of Title VII and the ADA.

44. The effect of the practices complained of in the foregoing paragraphs has been to deprive Green of equal employment opportunities and otherwise adversely affect his status as an employee because of his race, color, disability, and opposition to unlawful activity.

45. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

46. The unlawful employment practices complained of in the foregoing paragraphs were done with reckless indifference to Green's federally protected rights.

47. All conditions precedent to filing this lawsuit have been satisfied, as the Equal Employment Opportunity Commission issued a Right to Sue Letter to Green on September 2, 2020.

## **PRAYER FOR RELIEF**

A. Grant a permanent injunction against the Defendant and its officers, assigns and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of race, color, disability, or opposition to conduct made unlawful by Title VII and the ADA.

B. Order the Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for all races, colors, persons with disabilities, and

all persons who oppose conduct made unlawful by Title VII and the ADA, and which eradicate the effects of its past and present unlawful employment practices.

C.  Order the Defendant to make whole Green by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.  Order the Defendant to make whole Green by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the foregoing paragraphs in amounts to be determined at trial.

E.  Order the Defendant to make whole Green by providing compensation for past and future nonpecuniary losses, including, but not limited to, emotional pain, suffering, inconvenience and mental anguish resulting from the unlawful practices complained of in the foregoing paragraphs in amounts to be determined at trial.

F.  Order the Defendant to pay Green punitive damages for its intentional violation of the law.

G.  Order the Defendant to compensate Green for the attorney's fees and costs he's incurred as a result of brining this action.

H.  Grant such further relief as the Court deems necessary and proper in the public interest.

**JURY TRIAL DEMANDED**

The Plaintiff, Johnny R. Green, requests a jury trial on all questions of fact raised by this complaint.

Dated on this 21st day of October, 2020.

                                        **MCDONALD & KLOTH, LLC**
                                        Attorneys for Plaintiff

                By:    s/Shannon D. McDonald
                       Shannon D. McDonald
                       WI State Bar No. 1036954
                       Christopher M. Kloth
                       WI State Bar No. 1061498
                       MCDONALD & KLOTH, LLC
                       N96W18221 County Line Rd. #200
                       Menomonee Falls, WI 53051
                       Direct: (262) 252-9123
                       Office: (262) 252-9122
                       Fax:    (414) 395-8773
                       sdm@themklaw.com
                       cmk@themklaw.com

9

Case 2:20-cv-01602-LA    Filed 10/21/20    Page 9 of 9    Document 1